IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREG BOURLOTOS and LISA BOURLOTOS,<br><br>                *Plaintiffs*,<br><br>    v.<br><br>BUCKS COUNTY, *et al.*,<br><br>                *Defendants*. | CIVIL ACTION<br>No. 16-01419 |

**PAPPERT, J.**                                                                                                             June 20, 2016

<u>**MEMORANDUM**</u>

Plaintiffs Greg and Lisa Bourlotos ("Bourlotos" and "Mrs. Bourlotos" respectively) sued Defendants Bucks County Adult Probation Department ("BCPD") and Walter Webb ("Webb"), individually and in his official capacity as a Parole Officer for the BCPD, alleging: (1) malicious prosecution; (2) false arrest; (3) false imprisonment; (4) municipal liability under *Monell*; and (5) loss of consortium.[1] The claims arise from Bourlotos's arrest and detention pursuant to an erroneously issued arrest warrant. Defendants move to dismiss the complaint. The Court grants the motion, with leave to amend Counts 2–5.

**I.**

On October 2, 2006 Bourlotos was sentenced to four years probation by the Bucks County Court of Common Pleas. (Compl. ¶ 7, ECF No. 1.) The complaint does not identify the offense of conviction but states that the court ordered Bourlotos to undergo sex offender treatment and register as a sex offender as part of his probation. (*Id.*) Because Bourlotos lived in

---

[1]     The complaint also references "John Does 1–10." (Compl. ¶ 6, ECF No. 1.) John Does 1–10 are not named Defendants in the case. The Court's opinion therefore only applies to Webb and Bucks County. *See Grdinich v. Phila. Housing Auth.*, No. 10-cv-4954, 2011 WL 4467658, at *3 n.10 ("While Plaintiff liberally uses the word 'Defendants' at various times in the Amended Complaint, such blanket, non-specific assertions do not meet muster . . . . Plaintiff fails to aver the individual participation by [a defendant] that is necessary to support even an inference of liability on any Count (i.e., fails to raise the right to relief above a speculative level).").

1

Schoharie County, New York, his probation was transferred by the BCPD to the Schoharie County Probation Department ("SCPD").  (*Id.* ¶ 9.)  Bourlotos participated in a sex offender treatment program in Schoharie County, which he completed in October of 2009.  (*Id.* ¶ 8.)  Bourlotos alleges that upon the expiration of the four year probationary period on October 2, 2010, the SCPD informed the BCPD that his probation had ended.  (*Id.* ¶ 10.)

Seven months later, however, a Bucks County judge issued "a bench warrant . . . for [Bourlotos's] arrest because he failed to appear at a 'parole violation hearing' . . . at the Bucks County Courthouse."  (*Id.* ¶ 12.)  The underlying violation was for Bourlotos's failure to attend sex offender treatment pursuant to his October 2, 2006 sentence.  (*Id.*)  Bourlotos contends that he never received notice of the hearing or the fact that a warrant had been issued for his arrest.  (*Id.* ¶¶ 12–13.)

In May of 2015 Bourlotos moved from Schoharie County to Otsego County, New York.  (*Id.* ¶ 14.)  Bourlotos informed the Otsego County Sherriff's Department ("the Sherriff's Department") that he was a registered sex offender.  (*Id.*)  The Sherriff's Department ran Bourlotos's information and discovered the outstanding Bucks County arrest warrant.  (*Id.* ¶ 15.)  On July 17, 2015 two deputies from the Sherriff's Department went to Bourlotos's house, informed him of the active warrant and took him into custody.  (*Id.* ¶ 16.)  Bourlotos told the deputies that he had completed treatment and asked that they contact the SCPD.  (*Id.* ¶ 17.)  The deputies told him they had checked with the BCPD and confirmed that the warrant was valid.  (*Id.*)

Bourlotos was arraigned in both Worcester Municipal County and Otsego County Court.  (*Id.* ¶ 18.)  When he asked for someone to call the SCPD, Bourlotos was told to "get a lawyer."  (*Id.*)  Bourlotos remained in jail in Otsego County for six days before being transferred to the

Bucks County jail. (*Id.* ¶ 19.) When he arrived, Bourlotos told officers that he had completed his treatment but no one in the jail made any effort to confirm his complaints. (*Id.* ¶¶ 20–21.) Webb instead allegedly instructed Bourlotos to plead guilty and accept a sentence of thirty days in prison, which he refused. (*Id.* ¶ 22.) When Bourlotos told Webb that he completed his probation, Webb "threatened to tell the Court that [Bourlotos] was a sex offender and recommend that he be imprisoned until a hearing in September if he did not plead guilty and accept a sentence of thirty days." (*Id.* ¶ 23.) Bourlotos remained in Bucks County jail for the remainder of July and into early August. (*Id.* ¶ 24.)

Bourlotos, "then 61 years of age and seriously disabled," was placed within the general population. (*Id.* ¶ 25.) He feared for his safety and became distressed as a result of "being locked up with violent criminals." (*Id.*) Bourlotos told officers that he had difficulty walking and needed a wheelchair, which the officers denied him, irreparably damaging his knee. (*Id.* ¶ 26.) The officers also denied him medication for his "congestive heart conditions[] and chronic obstructive pulmonary disease," as well as "the ability to monitor/test his diabetes," which resulted in pain, agony and damage to his physical health. (*Id.* ¶ 27.)

On July 22, 2015 Bourlotos appeared at a hearing before a Bucks County judge. (*Id.* ¶ 29.) At the hearing, Webb allegedly portrayed Bourlotos as a sex offender who "violat[ed] the terms of his probation by fleeing to New York." (*Id.* ¶ 29.) Bourlotos explained his circumstances to the judge, who "recognized that there were serious factual deficiencies with the grounds for [the] arrest warrant." (*Id.* ¶ 30.) The judge instructed Webb "to produce proof of [Bourlotos's] alleged [probation] violations." (*Id.*) Webb told the judge they had no record of Bourlotos's transfer to New York, his completion of treatment or the termination of his probation. (*Id.* ¶ 31.) The judge ordered that Bourlotos be held until the warrant could be

3

vacated "upon presentation of proofs that he had completed his probation without incident." (*Id.* ¶ 32.)

Bourlotos contends that the BCPD failed to take any efforts to investigate after the hearing. (*Id.* ¶ 33.) Instead, Mrs. Bourlotos "independently obtained pertinent records from the [SCPD] and arranged to have them forwarded to the [BCPD]." (*Id.* ¶ 34.) On July 29, 2015 Rosemarie Keller, an employee of the SCPD, informed Mrs. Bourlotos that she spoke with the BCPD and that they would be rescinding the warrant. (*Id.* ¶ 35.) An SCPD supervisor allegedly "commented that the information [Mrs.] Bourlotos had requested was previously given to Defendants in 2010." (*Id.*) The supervisor also "expressed confusion as to why they were now behaving as though they had no prior knowledge of [Bourlotos] completing his parole and treatment in New York." (*Id.*)

On August 5, 2015 Webb told the Bucks County judge: "our department has verified, via the probation department in New York that Mr. Bourlotos has complied with the conditions of his probation." (*Id.* ¶ 37.) After spending twenty-three days in jail, Bourlotos was released on August 7, 2015. (*Id.* ¶ 38.) Bourlotos contends that following his release, "defendants still would not acknowledge that they had transferred [his] probation to Schoharie County." (*Id.* ¶ 39.)

The Bourlotoses filed their complaint on March 28, 2016. (ECF No. 1.) Defendants filed their motion to dismiss on May 6, 2016. (ECF No. 7.) The Bourlotoses responded on June 6, 2016 (ECF No. 11) and the Court held oral argument on June 15, 2016. (ECF No. 14.)

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level . . . on the assumption

4

that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The court must construe the complaint in the light most favorable to the plaintiff.  *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted).  A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Under *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.  *See Connelly*, 809 F.3d at 787.  First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Under Federal Rule of Civil Procedure 15(a), "courts may grant . . . amendments 'when justice so requires.'" *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (citation omitted).  A court may deny leave to amend where further amendment would be futile.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).  "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted.  *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1434).

**III.**

To establish a prima facie case under 42 U.S.C. Section 1983, Bourlotos must demonstrate that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Neither party disputes that Webb was acting "under color of law" for purposes of a Section 1983 claim. Bourlotos must also show that the person acting under color of law "intentionally" violated his Fourth Amendment rights or acted "deliberately indifferent" in violation of his Fourteenth Amendment rights. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. California*, 401 U.S. 797, 802–05 (1971)); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). At oral argument Bourlotos conceded that he no longer bases his claims on violations of the Fourteenth Amendment. (Oral Arg. 19:6–21.) He must therefore show that Webb intentionally violated his Fourth Amendment rights.[2]

**A.**

Count I of the complaint alleges a claim for malicious prosecution against Webb under the Fourth Amendment. To establish a malicious prosecution claim "under section 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v.*

---

[2] Bourlotos alleges his Section 1983 claims against Webb in both his individual and official capacities. Claims against Webb in his official capacity are essentially claims against the municipality. *See A.M. v. Luzerne Cty. Juvenile Detention Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004). Because Bucks County is a named defendant, the Court dismisses these claims. *See, e.g.*, *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 662–63 (W.D. Pa. 2010) (dismissing *sua sponte* claim against officer in his official capacity as duplicative of claim against municipality). Bourlotos conceded the official capacity claims at oral argument. (Oral Arg. 31:2–25.)

*Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

As the name suggests, malicious prosecution requires a prosecution. "What occurred prior to the prosecution, that is, the time between arrest and the lodging of *formal charges*, is not a basis for a malicious prosecution claim." *Roberts v. Caesar's Entm't, Inc.*, 72 F. Supp. 3d 575, 581 (E.D. Pa. 2014) (emphasis added). Bourlotos admitted that no charges were filed against him. (Oral Arg. 24:1–25:5.) Since there was no "prosecution," and thus no criminal proceeding, this claim fails.[3] Any further amendment would be futile as the claim is legally insufficient on its face. *See Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983), *cert. denied*, 464 U.S. 937 (1983).

**B.**

Counts II and III of the complaint allege claims for false arrest and false imprisonment against Webb under the Fourth Amendment.[4] False arrest and false imprisonment claims are nearly identical and generally analyzed together. *See Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 571 n.8 (E.D. Pa. 2005) (citation omitted). Both claims "are predicated on an arrest made without probable cause in violation of the Fourth Amendment." *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013) (citation and internal quotation marks omitted). Accordingly, an arrest supported by probable cause will negate both claims. *See Groman*, 47 F.3d at 636. As discussed *supra*, Fourth Amendment claims of false arrest require that an officer act

---

[3] Bourlotos also alleges this claim under Pennsylvania law. A claim for malicious prosecution under Pennsylvania law requires proof of only the first four elements. *See Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993). Because the Court dismisses Count I for failure to allege the first element, it dismisses the state claim as well.

[4] Bourlotos also alleges these claims under Pennsylvania law. Like false arrest and false imprisonment claims under the Fourth Amendment, Pennsylvania law requires intentional conduct and a lack of probable cause. *See, e.g.*, *Renk v. City of Pittsburgh*, 641 A.2d 289, 294 (Pa. 1994) (finding that a claim for false arrest turned on whether the officer acted intentionally and without probable cause).

intentionally. *See, e.g.*, *Berg*, 219 F.3d at 274 (finding Fourth Amendment false arrest claim insufficient where plaintiff failed to show that officer acted intentionally).

The Third Circuit Court of Appeals has held that an "erroneously issued warrant cannot provide probable cause for an arrest." *Berg*, 219 F.3d at 270. At oral argument, Defendants conceded that the warrant was erroneously issued. (Oral Arg. 12:18–13:11.) Webb contends, however, that he cannot be liable for false arrest since he did not effectuate the actual arrest. (Def.'s Mem. in Supp. of Mot. to Dismiss at 9, ECF No. 7-1.) "As a general rule, a government official's liability for causing an arrest is the same as for carrying it out." *Berg*, 219 F.3d at 272. Accordingly, the Third Circuit has held that "liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion." *Id.* Webb could therefore be found to have arrested Bourlotos if his intentional acts caused the arrest in New York.

The complaint does not allege facts showing that Webb acted intentionally. The complaint broadly alleges that "Defendants falsely indicat[ed] that [Bourlotos] had violated the conditions of his parole." (Compl. ¶ 40.) Bourlotos represented at oral argument that "Defendants" encompassed Webb and John Does 1–10. (Oral Arg. 17:17–19.) While the complaint alleges that Webb made threatening remarks when Bourlotos was in jail, it makes no mention of Webb's involvement in setting the arrest in motion. The "mere possibility" that Webb intentionally caused the warrant to issue is not enough. *See Iqbal*, 556 U.S. 679 (2009). The Court grants Bourlotos leave to amend his complaint so that he may attempt to allege facts sufficient to show that Webb acted intentionally.

**C.**

Count IV of the complaint alleges a *Monell* claim against the BCPD. Generally, a municipality will not be held liable under the doctrine of *respondeat superior* for the misconduct of its employees. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). Rather, a municipality can only be liable under Section 1983 when a constitutional injury results from the implementation or execution of an officially adopted policy or informally adopted custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978)). A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom. *See Monell*, 436 U.S. at 658. Bourlotos must also show that "an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Andrews*, 895 F.2d at 1480).

Because the Court dismisses Counts I–III, Bourlotos has failed to establish an underlying constitutional violation. The complaint additionally fails to allege facts supporting the existence of a policy or custom attributable to the BCPD. The only allegation of a policy is the conclusory assertion that ". . . upon information and belief, Defendants arrest and imprison citizens without any meaningful investigation and/or ignore exculpatory evidence that citizens have not violated probation." (Compl. ¶ 41.) Moreover, the complaint states that Bourlotos's claims stem from an isolated occurrence. *See, e.g.*, *Turner v. City of Phila.*, 22 F. Supp. 2d 434, 437 (E.D. Pa. 1998) ("Absent unusual circumstances, '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.'") (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808,

823–24 (1985). Also lacking are any allegations that identify a policymaker. For these reasons the Court dismisses Count IV.

### D.

Because the Court dismisses Counts I–IV, it must also dismiss Mrs. Bourlotos's loss of consortium claim. *See Szydlowski v. City of Phila.*, 134 F. Supp. 2d 636, 639 (E.D. Pa. 2001). Mrs. Bourlotos may reassert this claim in the amended complaint. An appropriate order follows.[5]

BY THE COURT

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J

---

[5] Because the Court dismisses the complaint in its entirety, it need not address Defendants' qualified immunity argument.